IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

MASSIMO CONTENTI,

Defendant.

CRIMINAL NO. 07-127 (CCC)

**REPORT AND RECOMMENDATION**

**PROCEDURAL BACKGROUND**

On March 21, 2007, a grand jury issued a two-count indictment against defendant Massimo Contenti pursuant to Title 21, United States Code, Section 841(a)(1) and (b)(1)(B) (possession with intent to distribute in excess of one hundred grams of heroin) and Title 21, United States Code, Section 952(a) (importation of at least one hundred grams of heroin).  Docket 11.  Defendant filed a motion on May 25, 2007, requesting that certain statements made by the defendant after the waiver of his Miranda[1] rights be suppressed because: (1) "there is no proof ... that the agents were fluent in the defendant's native tongue (Italian) or that he was already familiar with the American justice system"; (2) "[i]t should be found, as a matter of law, that the standard waiver form utilized by federal law enforcement agencies in this and other cases does not constitute a valid waiver by itself" because said form "is ambiguous insofar as it combines the knowledge of the rights with their waiving in the same form"; (3) "at no time the consular authorities responsible for Mr. Contenti's welfare were contacted".  Docket 25 (hereinafter referred to as "Motion to Suppress").  In essence, the defendant alleges that his

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

waiver of the <u>Miranda</u> rights was not voluntarily, knowingly or intelligently made and that the violation

of his rights under the Vienna Convention on Consular Relations April 24, 1963, 21 U.S.T. 77, 596

U.N.T.S. 261, 1967 WL18349 (ratified November 24, 1969) ("the Vienna Convention") warrants that

his post-waiver statements be suppressed.[2]

On May 30, 2007, the Honorable Judge Carmen C. Cerezo referred the Motion to Suppress to

the undersigned for a hearing, report and recommendation.  Dockets 26-27.  An evidentiary hearing

was held on June 19, 2007.  Docket 29.

### EVIDENTIARY HEARING

During the evidentiary hearing, the government called three witnesses to testify: (1) Agustín Báez

Santiago, an Immigration and Customs Enforcement ("ICE") Agent; (2) Pedro Angel Colón Ríos, a

Police of Puerto Rico officer currently assigned as a Task Force Agent with ICE; and (3) Wendy Moreno

Rodríguez, Pre-Trial Services Officer with the U.S. Probation Office for the District of Puerto Rico.

---

[2]Although the Motion to Suppress does not specify which statements specifically the defendant is seeking to suppress, defense counsel indicated, relying on a Report of Investigation ("ROI") prepared by Agent Agustín Báez Santiago dated March 30, 2007, multiple statements contained in said report such as: "Contenti stated to the Immigration Customs Enforcement agents that he bought the computer for $300.00 from an Italian friend that he met at Cartagena, Colombia... [Contenti said] that he was afraid of naming his alleged friend for fear of retaliation if they find out at Cartagena that he was giving information.  He was afraid for the well being of his girlfriend at Cartagena.  Contenti said that his girlfriend's name is María and that he met her at Hotel Delicias at Maracaibo, about twenty to twenty five days prior to his arrest.  He also said that María took care of the air ticket.  According to Contenti, he doesn't know his girlfriend's last name.  Contenti said that he stayed at Cartagena since October 14, 2006; he also alleged that he is trying to open a fast food and telephone cabin business at Cartagena.  Contenti said that he bought the laptop computer 20 to 25 days prior to his arrest at Puerto Rico from a friend at Colombia.  He also said that at the moment of his arrest his friend was in Italy.  He also stated that his Italian friend was asking him showing a lot of interest about the date [of] his arrival to Italy.  Contenti added that probably his friend wanted to pick up the laptop.  According to Contenti the laptop went through the airport security at Cartagena, that it was inspected by Colombian authorities, and it was operational at the moment.  At all times Contenti denied any knowledge of the heroin that was concealed on the laptop back panels.  Contenti admitted that he was an occasional drug user.  He also alleges that he never touched the inside of the laptop where the heroin was concealed.  He stated that he bought the laptop for $300.00 because he knew it was a good price and it was impossible to buy a laptop for that price at Italy."  The ROI was not marked as an exhibit during the evidentiary hearing; the same is being quoted simply to clarify that defense counsel alluded to these statements as being the ones that he is seeking to suppress with the exception that the defense is not seeking suppression of defendant's statement in which he denied any knowledge of the heroin that was concealed in the laptop.

I.      **Agustín Báez Santiago**

Agent Agustín Báez Santiago ("Agent Báez") testified that on March 7, 2007, he went to the Port of Mayagüez because inspectors had detained the defendant with a laptop containing heroin.  After some brief introductory remarks defendant was read his Miranda rights in the Spanish language, which, according to Agent Báez, defendant understood and waived.  The waiver form, which is written in the Spanish language, was signed by the defendant in the presence of Agent Báez and of Agent Clemente Cruz.  Exhibit 2.  A waiver form in the Italian language was never provided to the defendant.

Agent Báez indicated that the defendant did not have any difficulty answering his questions in Spanish.  He asked the defendant whether he understood Spanish, to which the defendant replied in the affirmative, clarifying that he understood Spanish better than English.  Furthermore, Agent Báez asserted that the defendant never requested the services of an Italian interpreter in the one-to-two hour session that Agent Báez had with the defendant after he waived his Miranda rights.  Moreover, Agent Báez testified that defendant was able to make complete sentences and even jokes in the Spanish language.

Agent Báez did not ask the defendant whether he wished the Italian consulate to be notified and the defendant never requested that said consulate be notified.  Defendant also did not want his relatives to be contacted by the agents.

Even though prior to being detained by inspectors Contenti filled out a Customs Declaration Form in Spanish, he also filled out one in Italian.  Exhibits 1 and A.  These forms were not signed in Agent Báez's presence, but Agent Báez acknowledged that the signature of the Customs Declaration Form in the Italian version (Exhibit A) was similar to the one in the Spanish version (Exhibit 1), and that the signature in the Spanish version (Exhibit 1) was similar to the one in the waiver form (Exhibit 2) that was

**3**

signed in his presence.  Agent Báez also testified that the Customs Declaration Form is required of each traveler that attempts to enter from a foreign country into the United States.

## II.    Pedro Angel Colón Ríos

Task Force ICE Agent Pedro Angel Colón Ríos ("Agent Colón") transported the defendant from the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico, to the U.S. Pretrial Services Office.  Agent Colón, who was not involved in the investigation of this case, had a conversation with the defendant during the trip from MDC to the U.S. Pretrial Services Office.  According to Agent Colón, the conversation took place in the Spanish language and the subject of the same geared primarily about Italy and Colombia, not about the details of the offense charged in this case.  Agent Colón indicated that the defendant was able to answer him in the Spanish language.

## III.    Wendy Moreno Rodríguez

Wendy Moreno Rodríguez ("Officer Moreno"), Officer at the U.S. Pretrial Services Office, interviewed the defendant on March 8, 2007, for purposes of preparing a report for the bail hearing. Officer Moreno conducted the interview in Spanish, that is, asking questions to the defendant in the Spanish language.  Officer Moreno testified that although the defendant sometimes interjected Italian words in his conversation with her, he had no problem in speaking to her in Spanish.  In fact, she said that the defendant was able to answer all her questions and even talked to her in Spanish about a business enterprise in Italy.  At no point during the interview Officer Moreno felt that the defendant was not understanding her questions.  Said interview lasted approximately one hour.

Officer Moreno also stated that prior to the interview, defense counsel arrived to the U.S. Pretrial Services Office.  Neither defense counsel nor the defendant requested the services of an Italian interpreter

for purposes of the interview with Officer Moreno.[3]   Furthermore, defendant never indicated to

Officer Moreno that he wished his family or the Italian consul to be notified of the pending case.

LEGAL ANALYSIS

Defendant's Motion to Suppress essentially makes three arguments: (1) the Miranda waiver form

used is ambiguous; (2) defendant should have been provided an Italian interpreter when he was

interviewed by the agents; and (3) failure to notify the Italian consul warrants suppression of the

defendant's statements.  The first two arguments address the concern that defendant's waiver was not

made knowingly.  The last argument is basically an issue of law, as there is no dispute between the parties

that defendant was not asked whether he wished to have the Italian consul notified.  The Court shall now

address each of these three arguments.

## I.      The Miranda Waiver Form

Defendant claims that the form used by the agents to obtain the waiver of his Miranda rights is

ambiguous because it combines an acknowledgment of understanding the rights with the waiver of the

same under one same signature.  Docket 25 at p.6.  This form, according to the defendant, is a "booby-

trap" and thus, a valid waiver cannot be presumed from its use.  Id.

Defendant would like the Court to adopt dictum from the Court of Appeals for the Tenth Circuit

suggesting that "[l]aw enforcement officials may find it desirable in the future, in order to avoid the

problem presented here, to utilize two distinct form, one perhaps captioned 'Advice of Rights' form

setting forth one's rights under Miranda with a signatory line for acknowledgment that he or she has read

---

[3]It is unclear whether the attorney that arrived to the U.S. Pretrial Services Office was Assistant Federal Public Defender Francisco Valcárcel, currently representing the defendant for purposes of the suppression hearing, or another attorney from the Federal Public Defender's Office.  Ultimately, however, it does not make a difference who was the attorney from the Federal Public Defender's Office that was present at the U.S. Pretrial Services Office for purposes of analyzing the merits of defendant's Motion to Suppress.

5

the statement of rights and understands the same, and a second form perhaps captioned 'Waiver of Rights'....  This approach may eliminate any confusion existing between the concepts of 'understanding rights' and 'waiver of rights'".  U.S. v. Obregon, 748 F.2d 1371, 1381 (10th Cir. 1984).

In Miranda, the Supreme Court stated that "prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.  The Supreme Court further held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Consequently, a statement obtained by government agents as a result of custodial interrogation must be suppressed unless the government can demonstrate that the defendant was properly advised of his rights and that he voluntarily, knowingly and intelligently waived those rights.  United States v. Palmer, 203 F.3d 55, 60  (1st Cir. 2000).

Miranda warnings need not follow any particular format, so as to avoid a ritualistic formalism requirement, as long as the substance of the rights involved is adequately conveyed.  California v. Prysock, 451 U.S. 1301 (1981).  Even an unsigned statement goes to its weight and credibility, not to its admissibility, when it is proven that the defendant understood and adopted the substance of such statement.  Wong Sun v. United States, 371 U.S. 471 (1963).

A waiver of Miranda rights has been knowingly and intelligently executed when "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).  However, the suspect need not "know and understand every possible consequence of a waiver of the 5th Amendment privilege." Colorado v. Spring,

**6**

479 U.S. 564, 574 (1987). Rather, he need only be aware that "he may choose not to talk to law enforcement officers, and to talk only with counsel present, or to discontinue talking at any time." Id. In adhering to said legal principles, a statement is not considered involuntary unless it is procured by coercion or trickery. Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, (1986), accord, United States v. Byram, 145 F.3d 405, 407 (1st Cir. 1998); United States v. Santos, 131 F.3d 16, 19 (1st Cir. 1997). Whether defendant has validly waived his rights is a question to be determined by examining the totality of the circumstances in which said statement was procured and given.

The waiver-of-Miranda-rights form used in the case at bar is divided in two sections: the first one reads in bold, capital letters "Declaration of Rights", while the second section reads, also in bold, capital letters "Waiver of Rights". Exhibit 2 (translation ours). The first section outlines the Miranda rights. The second section, however, contains two statements: "I have read my declaration of rights and understand which are my rights. At this moment, I am willing to answer questions without an attorney present." Id. (Translation ours). Below the second section, there are three signatory lines for the defendant and two witnesses, as well as a space to specify the date and time when the form was signed.

A review of the Miranda waiver form used in this case does not lead to the conclusion that the same is ambiguous. The first section clearly warns the defendant of his Miranda rights, such as the right to remain silent, the warning that any statement made may be used against him, the right to consult an attorney prior to making any statement, the right to have counsel even if the defendant cannot afford one, and the right to stop answering questions at any given moment if he decides to answer any questions. The thrust of defendant's allegations, however, deals with the second section of the form. Defendant claims that the form used is ambiguous in failing to differentiate between the understanding of rights and the waiver of rights. Thus, defendant implicitly argues that he did not know that he was waiving his

rights when signing the form; his signature should be interpreted, rather, as merely acknowledging that

he has understood his Miranda rights.

The Court finds defendant's argument unpersuasive.  The second section of the form at issue is

titled in bold, capital letters "Waiver of Rights" not "Acknowledgment of Rights" or "Advice of Rights".

Therefore, prior to signature line, the defendant is clearly warned that this is a waiver form.  Furthermore,

although the first sentence of the second section of the form constitutes an acknowledgment that the

defendant has understood his rights, the second sentence, namely the last sentence right before the

signatory line reads: "At this time, I am willing to answer questions without an attorney present."  Id.

(translation ours).  This sentence is not ambiguous.  Neither is the title to the second section of the form

"Waiver of Rights" confusing in any way.  Prior to the signatory line, defendant is clearly warned that

this is a waiver form and that by signing the same, he is indicating that he is willing to answer questions

without an attorney present.  The fact that defendant's signature also confirms that he has understood his

rights does not render the form ambiguous.  The sentence indicating that the defendant has understood

his rights is distinct and separate from the sentence indicating defendant's willingness to answer

questions without an attorney.   Therefore, defendant's allegations that his statements should be

suppressed because of the inherent ambiguity of the waiver form lack merit.

## II.     Use of the Spanish Language

Defendant also claims that "there is no proof here that the agents were fluent in the defendant's

native tongue (Italian)...."  Docket 25 at p.3.  Implicit in defendant's argument is the allegation that he

did not understand the explanation of his Miranda rights and that he did not knowingly waive said rights

because the waiver form was in Spanish, rather than in Italian, and because the agents did not use an

interpreter when they intervened with him at Mayagüez.

Three different individuals testified during the evidentiary hearing indicating in unequivocal terms that the defendant understands Spanish and is able to communicate in the Spanish language. Agent Báez, who went to the Mayagüez Port once defendant had been detained and read him his Miranda rights, indicated that the defendant did not have any difficulty answering his questions in Spanish. Furthermore, the defendant asserted to Agent Báez that he understood the Spanish language. According to Agent Báez, the defendant was able to make complete sentences – and even jokes – in Spanish. Furthermore, Agent Báez testified that the defendant never requested the services of an Italian interpreter in the one-to-two hour session that Agent Báez had with the defendant after he waived his Miranda rights.

Agent Colón, who transported the defendant from MDC to the U.S. Pretrial Services Office, also had a conversation in Spanish with the defendant. During the trip from MDC to the U.S. Pretrial Services Office, according to Agent Colón, the defendant talked about Italy and Colombia and was able to carry out a conversation in the Spanish language.

Finally, Officer Moreno testified that she interviewed the defendant for approximately one hour in Spanish. Despite of the fact that occasionally the defendant would use Italian words, Officer Moreno indicated that he had no problem in speaking to her in Spanish. In particular, she said that the defendant was able to answer all her questions and even talk about a business enterprise in the Spanish language. Neither the defendant nor defense counsel requested an Italian interpreter for purposes of the interview conducted at the U.S. Pretrial Services Office.

It is evident, in light of the testimonies detailed above, that the defendant has sufficient knowledge of the Spanish language to engage in a meaningful conversation with agents or officers. Therefore, the Court concludes that there is no basis to suggest that defendant's waiver of his Miranda rights was involuntary or unknowingly made due to difficulties with the Spanish language.

III.   **Lack of Consular Notification**

Defendant alleges that the government in this case failed to notify Italian consular officials

pursuant to Article 36 of the Vienna Convention.  In particular, defendant claims that "failure of

government agents to contact consular authorities has a doubly prejudicial effect upon foreign defendants

and the rule of law: one, it unfairly prejudices them in situations where a citizen defendant would have

known to exercise his rights (i.e., stay quiet) under American law and two, it creates an incentive for

arresting agents to disregard binding treaty obligations of this country."  Motion to Suppress at p.4-5.

Even though defendant acknowledges that there is case law that has held that the Vienna Convention does

not create any exclusion remedy *per se*, he insists that it is a factor that should be taken into account in

evaluating the totality of the circumstances.

The United States Court of Appeals for the First Circuit has addressed consular notification issues

previously:

> The United States Constitution provides that ratified treaties are to be regarded as
> the law of the land.  See U.S. Const. art. VI, cl.2.  However, treaties do not generally
> create rights that are privately enforceable in the federal courts... Even stronger than the
> presumption against private rights of action under international treaties is the presumption
> against the creation of rights enforceable by the suppression of evidence or by the
> dismissal of an indictment.  Historically, such remedies have been available only in cases
> implicating the most fundamental of rights.  This class has heretofore been limited to
> those paramount protections secured by the Fourth, Fifth, and Sixth Amendments to the
> United States Constitution."  Article 36 of the Vienna Convention ... [does] not create –
> explicitly or otherwise – fundamental rights on par with the right to be free from
> unreasonable searches, the privilege against self-incrimination, or the right to counsel.
> See, e.g., United States v. Ademaj, 170 F.3d 58, 67 (1st Cir. 1999) ("[T]he Vienna
> Convention itself prescribes no judicial remedy or other recourse for its violation.");
> Waldron v. INS, 17 F.3d 511, 518 (2nd Cir. 1993) ("Although compliance with our treaty
> obligations clearly is required, we decline to equate such a provision with fundamental
> rights."); United States v. Chaparro-Alcantara, 37 F.Supp.2d 1122, 1125 (N.D.Ill. 1999)
> ("It is clear that Article 36 does not create a 'fundamental' right, such as the Sixth
> Amendment right to counsel, or the Fifth Amendment right against self-incrimination
> which originates from concepts of due process.") **Defendants who assert violations of**

**a statute or a treaty that does not create fundamental rights are not generally entitled to the suppression of evidence unless that statute or treaty provides for such a remedy.** See, e.g., United States v. Thompson, 936 F.2d 1249, 1252 (11th Cir. 1991) ("Absent a specific reference to an exclusionary rule, it is not appropriate for the courts to read such a provision into [an] act."); United States v. Kington, 801 F.2d 733, 737 (5th Cir. 1986) (holding that rights created by Congress are not enforceable by suppression unless Congress has specifically provided for that remedy); Chaparro-Alcantara, 37 F.Supp.2d at 1125 ("[Article 36] does not create a 'fundamental right," and therefore "the suppression remedy must be available, if at all, from the Vienna Convention itself.")

U.S. v. Li, 206 F.3d 56, 60 (1st Cir. 2000) (emphasis added).

It is undisputed that the agents that intervened with the defendant in the instant case did not timely notify Italian consular authorities regarding defendant's detention and that they did not ask the defendant whether he wished said authorities to be notified. Such failure, however, does not amount to a violation of a fundamental right. As previously mentioned, Article 36 of the Vienna Convention does not create a fundamental right regarding consular notification and moreover, suppression of the evidence is not a remedy explicitly provided for failure to provide such notification. Therefore, defendant's argument that the agents' failure to notify consular authorities should prompt the Court to suppress the statements made after his waiver of the Miranda rights is untenable.

## CONCLUSION

Based on the witnesses' testimony at the evidentiary hearing and having assessed their credibility, it is determined that, pursuant to the preponderance of the evidence and considering the totality of the circumstances, defendant's statements were knowingly, intelligently, and voluntarily made, and thus consonant with their admissibility under the above findings and applicable law. In support of this conclusion, the Court finds that the waiver-of-Miranda-rights form used by the agents is not ambiguous and that defendant is sufficiently proficient in Spanish to carry out a meaningful conversation in said language. Furthermore, the agents' failure to notify Italian consular authorities does not imply the

**11**

violation of a fundamental right warranting suppression of the statements in controversy.  Thus, it is recommended that the Motion to Suppress be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation.  Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 8th day of August of 2007.

> s/Marcos E. López
> MARCOS E. LOPEZ
> UNITED STATES MAGISTRATE JUDGE

**12**